**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★        JUN 2 8 2005        ★

P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ROCKY L. FREEMAN,

                    Petitioner,

                                                                01 CV 0720 (SJ)

          -against-                                     <u>MEMORANDUM</u>
                                                                <u>AND ORDER</u>

UNITED STATES OF AMERICA,

                    Respondent.
-----------------------------------------------------X
A P P E A R A N C E S:

ROCKY L. FREEMAN
47292-053
United States Penitentiary-Big Sandy
P.O. Box 2068
Inez, KY 41224
Petitioner, *Pro Se*

UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York 11201
Attorneys for Respondent


JOHNSON, Senior District Judge:

          Presently before the Court is a Motion pursuant to 28 U.S.C. § 2255 by

Petitioner Rocky Freeman ("Petitioner") to vacate, set aside, or correct the conviction

and sentence imposed under criminal docket number 96 CR 0527. For the reasons

stated herein, the Motion is DENIED but a certificate of appealability is granted.

1

Petitioner argues for habeas relief on the basis of fifteen asserted violations of his due process rights or right to a fair trial: 1) perjured grand jury and trial testimony by government informant Isidro Hernandez-Pina; 2) false testimony by Detective Mark Brooks; 3) false testimony by government witness Hector Rivera; 4) failure to disclose to Petitioner exculpatory evidence of the murder victim's statements made to the police just before his death; 5) use of evidence from an arrest not grounded in probable cause, but instead on a fabricated confession; 6) bias and a prejudicial misstatement of law on the part of this Court; 7) ineffective assistance of counsel, grounded in counsel's alleged failure to investigate factual evidence, offer exculpatory evidence, make timely objections, or call a certain witness; 8) improper suppression of favorable evidence admissible under Federal Rule of Criminal Procedure 807; 9) use of perjured testimony by government witness Gricety Castro that misrepresented the crime scene; 10) improper statements regarding the credibility of a government informant; 11) failure to disclose favorable evidence of an eye-witness's statements made in an interview at the crime scene, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); 12) known use of perjured testimony of Detective Edward McDonough; 13) prosecutorial misconduct in the form of solicitation of prejudicial testimony from government witness Idelfa Jerez; 14) violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); and 15) violation of <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004).[1]

---

[1.] Grounds One through Thirteen were asserted in Petitioner's original Motion and Notice of Motion filed March 2, 2001; Grounds Fourteen and Fifteen were asserted in Petitioner's Supplemental Motion filed August 2, 2004.

P-049

## BACKGROUND

Petitioner was convicted after a jury trial of conspiracy to possess cocaine with intent to distribute under 21 U.S.C. §§ 841(b)(1)(A), 846; murder in the commission of a drug offense under 21 U.S.C. § 848(e)(1)(A); and use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c). United States v. Mateo-Feliz, 199 F.3d 1324, 1999 WL 1024616 (2d Cir. 1999). The charges stemmed from Petitioner's involvement in a cocaine distribution organization and from the murder of an individual by the name of Freddy Gonzalez. Id. Petitioner was sentenced to two consecutive life terms plus five years incarceration. The Second Circuit affirmed Petitioner's conviction on October 29, 1999. Id.

## DISCUSSION

### A.   Procedural Issues

Before discussing Petitioner's individual claims, it is necessary to address Respondent's contention that the Motion is both untimely, due to Petitioner's failure to file the Motion within the one year period prescribed by 28 U.S.C. § 2255, and procedurally barred, due to Petitioner's failure to either raise his claims at trial or on direct appeal or demonstrate "cause" and "prejudice" for his failure to do so. See, e.g., Bousley v. United States, 523 U.S. 614, 622–23 (1998).

### I.   Timeliness

Respondent states that with the possible exception of the claim based on newly discovered evidence and the Apprendi and Blakely claims, Petitioner's Motion must be

3

dismissed as untimely because it was not filed within one year after Petitioner's conviction became final, as required by 28 U.S.C. § 2255. Respondent argues that Petitioner's conviction became final on January 27, 2000 — ninety days after the Second Circuit upheld his conviction on October 29, 1999[2] — and the Petition was filed on March 2, 2001, more than one year and one month later. Petitioner notes, correctly, that under Houston v. Lack, 487 U.S. 266 (1988), the habeas petition of a federal prisoner proceeding *pro se* is considered to have been filed as of the date it was given to prison officials to be mailed to the court. Adeline v. Stinson, 206 F.3d 249, 251 (2d Cir. 2000) (citing Houston, 487 U.S. at 276). The Court notes that the Petition is dated January 29, 2001, and therefore the Court must assume that Petitioner gave the Motion to prison officials no sooner than January 29. Therefore, even if the Court grants the assumption that Petitioner attempted to file his Motion on this date, the Petition would have been outside the statute of limitations.

The situation is further complicated by the fact that Petitioner evidently miscalculated the 90 day portion of the statute of limitations period, taking it to be a three month — rather than 90 day — deadline that would set January 29, rather than January 27, as the final date. (Pet. Repl. at 3 (stating that "Under normal circumstances,

---

[2] For the purposes of 28 U.S.C. § 2255, a conviction becomes "final" when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires. Clay v. United States, 537 U.S. 522 (2003). The rules for the United States Supreme Court state that a petition for a writ of certiorari to review a decision by a United States Court of Appeals must be filed within ninety days after entry of the judgment. Id. at 525 (noting that time in which defendant could have petitioned for certiorari expired ninety days after the Court of Appeals affirmed the conviction); Sup. Ct. R. 13(1).

petitioner's 2255 motion would have been due on January 29, 2001.").) This miscalculation is unsurprising, particularly for a *pro se* petitioner.

Additionally, Petitioner asserts that he faced various impediments to filing: that he was kept in "keep-lock" status, that when he was held in federal custody he was separated from his legal papers and law books that were being held by the state prison where he was previously incarcerated, and that much of Petitioner's legal work was destroyed by a Federal Correctional Officer of the Metropolitan Correctional Center. (Id.)

Petitioner also states that there were delays in the prison's provision of a copy of Petitioner's prison account as needed for his application to proceed *in forma pauperis* ("IFP"). This final contention is supported by a copy of a letter from Petitioner to the prison's Grievance Officer dated February 18, in which Petitioner states that "I sended [sic] the [IFP] form out to them three (3) weeks ago. I'm late for my deadline in filing the motion due to the Account's Office disregard of my request of the information . . . . I sended [sic] a letter to the court explaining my situation, and hopeing [sic] to be excuses [sic]. . . . The motion can't be filed without it." (Pet. Repl. Ex. 2(b).) The IFP form Petitioner filled out was dated January 29, 2001. (Id. Ex. 1.)

The Second Circuit has held that the one year filing deadline of 28 U.S.C. § 2255 is not a jurisdictional bar, such that exceptions and equitable tolling are possible. Green v. U.S., 260 F.3d 78, 82 (2d Cir. 2001). There are limits to this rule, however: "a district court may grant an extension of time to file a motion pursuant to section 2255

5

only if (1) the moving party requests the extension upon or after filing an actual section 2255 motion, and (2) 'rare and exceptional' circumstances warrant equitably tolling the limitations period." Id. at 82–83.

Transfers between prison facilities, solitary confinement, lock-downs, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances. Hardy v. Conway, 299 F.Supp.2d 159, 161 (E.D.N.Y. 2004) (citing Asencio v. Senkowski, 2000 WL 1760908 at *2 n.4 (S.D.N.Y. Nov. 30, 2000); Montalvo v. Strack, 2000 WL 718439 at *2 (S.D.N.Y. June 5, 2000); Martinez v. Kuhlmann, 1999 WL 1565177 at *5 (S.D.N.Y. Dec. 3, 1999)). However, confiscation and/or destruction of legal papers may qualify as extraordinary circumstances. Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987); Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). The Court must determine whether the confiscation or destruction actually prevented Petitioner from filing on time. Valverde, 224 F.3d at 134. In this instance, the Court has little information on when the confiscation or destruction occurred, or what its causal role was in the late filing, but the Court must only find that the prison officials' acts resulted in a two-day delay in order to excuse the late filing.

The Court notes that Petitioner is asserting actual innocence, and has been sentenced to a term of life incarceration. The Second Circuit has not yet determined whether the Constitution requires an actual innocence exception to the statute of limitations for filing § 2255 petitions, but has stated that they will decide the issue when

6

a petitioner's credible showing of actual innocence compels them to do so. Doe v. Menefee, 391 F.3d 147, 154 (2d Cir. 2004). Lower courts have held that the statute of limitations should be equitably tolled when a petitioner makes out a credible claim of actual innocence. E.g. Garcia v. Portuondo, 334 F.Supp.2d 446, 462 (S.D.N.Y. 2004).

This Court holds that due to the combination of circumstances — Petitioner's actual innocence claims, the severe sentence Petitioner faces, Petitioner's miscalculation of the date that the statute of limitations expired, the fact that the Petition was only filed two days after the deadline passed, and the alleged confiscation and destruction of Petitioner's legal materials — the Court should consider the evidence presented by Petitioner to determine whether it is the type of credible, compelling evidence of actual innocence that might justify tolling the statute of limitations. See Doe v. Menefee, 391 F.3d 147, 154 (2d Cir. 2004). However, Petitioner's claims that do not constitute allegations of actual innocence are held to be time-barred.

## II.    *Cause and Prejudice*

As discussed below, most of Petitioner's claims could have been raised at trial or on direct appeal, but were not. "When a § 2255 petitioner asserts a cause of action that was not raised on direct review, the new claim will be considered procedurally defaulted and ineligible for review unless the petitioner 'can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Tavarez v. United States, 2005 WL 1107055, *1 (S.D.N.Y. May 9, 2005) (quoting Bousley, 523 U.S. at 622). "[D]emonstrations of 'actual innocence' require a showing that 'in light of all the

7

evidence, it is more likely than not that no reasonable juror would have convicted him.'" Id. (quoting Bousely, 523 U.S. at 623). In this case, Petitioner has not attempted to demonstrate "cause" or "prejudice" for failing to raise his claims earlier. Therefore, the Court finds that the only claims that are not procedurally barred are those that are made in support of his allegation of actual innocence.

**B.     Petitioner's Claims**

*I.      Allegedly Perjured Grand Jury and Trial Testimony by Government Informant Isidro Hernandez-Pina*

Petitioner states that government witness Isidro Hernandez-Pina committed perjury before the Grand Jury and during trial, regarding an confession allegedly made by Petitioner to Hernandez-Pina on September 6, 1996. Petitioner states that he did not speak to Hernandez-Pina on that date. In support of this contention, Petitioner has submitted a proposed affidavit by an individual named Lieutenant Nared, but as Petitioner notes, Lieutenant Nared has not signed the affidavit. (Letter from Petitioner to the Court, Dec. 20, 2002.) Petitioner also states that he has identified three witnesses who he claims are willing to testify that he could not have been on the sixth floor of the correctional facility on September 6, 1996. (Letter from Petitioner to the Court, Aug. 29, 2002.)

The Court finds that Petitioner's arguments constitute a claim of legal insufficiency rather than factual innocence, and thus the procedural defaults — Petitioner's failure to raise the claim at trial or on appeal, and Petitioner's late filing —

8

cannot be excused.  See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154.

Moreover, the Court notes that even if it were to overlook the weak and uncertain nature of the alleged evidence[3] and accept, *arguendo*, the contention that Hernandez-Pina committed perjury with respect to the confession, the Court finds that the claim must fail on the merits.  "A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses."  Conteh v. United States, 226 F.Supp.2d 514, 519–20 (S.D.N.Y. 2002).  Moreover, "a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief."  Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003).  Petitioner has not provided any evidence that the government knew about the alleged perjury (if, indeed, the testimony was perjured).  Where there is no showing that the government knew about the alleged perjury, "a new trial is warranted only if (1) the testimony was material, and (2) the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted."  Conteh, 226 F.Supp.2d at 519–20 (internal citations and quotations omitted).

The testimony at issue here constituted only a small portion of the evidence against Petitioner.  The other evidence against Petitioner included the testimony of numerous other witnesses and such damaging evidence as the fact that Petitioner was

---

[3.] The Court notes that, in addition to the fact that Lt. Nared has declined to sign the proposed affidavit and the other proposed witnesses have not submitted affidavits or letters, the evidence is weak in that it does not necessarily undermine the allegation that Petitioner made a confession to Hernandez-Pina.  For example, Hernandez-Pina may have been mistaken as to the date that the conversation took place (Petitioner himself admits that he spoke with Hernandez-Pina on September 3, 1996 (Pet. Repl. Govt. Resp. at 36)), or Hernandez-Pina may have come to the floor of the correctional facility where Petitioner was being held even if Petitioner could not go to the floor where Hernandez-Pina was being held.

9

stopped by the police while driving with the wounded murder victim in his car. As a result, even if Petitioner were to prevail in demonstrating that the confession did not occur, he could not meet his burden of demonstrating that "but for the perjured testimony, the defendant would most likely not have been convicted." Id. Petitioner's claim is therefore denied.

## II.    *Allegedly Perjured Testimony by Detective Mark Brooks*

Petitioner alleges that Detective Mark Brooks committed perjury in testifying that Petitioner called Lisa Washington from the 75th Precinct on June 24, 1993, because in fact Petitioner called Melinda McCoy, not Washington, at that time. In support of this claim Petitioner has produced affidavits from Washington and McCoy. (Aff. of Lisa Washington, Dec. 18, 2003; Aff. of Melinda McCoy, June 1, 2000.)

The Court finds that this claim must fail for the same reasons as the claim regarding the alleged perjury by Hernandez-Pina: the claim is both procedurally barred and meritless. It is procedurally barred because it does not constitute a claim of factual innocence — given that the alleged phone call to McCoy does not provide Petitioner with evidence of his innocence — with the result that the procedural defaults cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154.

The claim is meritless because the suggestion that Petitioner called Lisa Washington contributed little or nothing to the evidence of Petitioner's guilt, as compared to the other evidence against Petitioner. Petitioner has not provided any

10

evidence that the government knew that the testimony was perjured or that Detective

Brooks knowingly misrepresented the events of that day. In sum, even if the Court

were to accept that the phone call to Washington did not take place, Petitioner cannot

meet his burden of demonstrating that "but for the perjured testimony, [he] would most

likely not have been convicted." Conteh, 226 F.Supp.2d at 519–20.

### III.     *Allegedly Perjured Testimony by Government Witness Hector Rivera*

Petitioner asserts that government witness Hector Rivera committed perjury

when testifying that he had a conversation with Washington in which Washington

informed Rivera of Petitioner's arrest. The statements Petitioner appears to be referring

to are Rivera's testimony in which Rivera related his own conversation with Mateo-

Feliz, in which he informed Mateo-Feliz that Washington had told him of Petitioner's

arrest. The Court finds that this claim must fail for the same reason as Petitioner's

other perjury claims.

The Court only addresses the claim separately in order to point out that in

addition to the reasons stated above, this claim is further weakened by the fact that the

statements allegedly made by Washington were not admitted for their truth. Rather,

they were admitted under an exception to the hearsay rule based on the fact that the

purpose of the testimony was to demonstrate the effect on Mateo-Feliz. Mateo-Feliz,

1999 WL 1024616 at *1. Therefore, a finding that the statements were not true would

not necessarily undercut the testimony.

### IV.     *Alleged __Brady__ Violation*

11

Petitioner alleges that the government committed a constitutional violation in failing to disclose exculpatory evidence of the murder victim's statements made just before his death, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Petitioner states that:

> Upon arrival at the hospital, and while helping Petitioner aid Gonzalez into the hospital, the officers [began] to question Gonzalez. They asked Gonzalez who had shot him. In response to their questions, Gonzalez informed the officers that two blackmen [sic] had in fact shot him. Upon receiving this information, the officers wrote it down and called this information in over their police radio. The description that Gonzalez gave them while he was alive [sic].

(Pet. Repl. Govt. Resp. at 30.) The statement that Petitioner claims was withheld by the government was the alleged statement inculpating two black men for the murder.

When making a <u>Brady</u> claim, "[a]s a threshold matter, the defendant must show that the Government actually suppressed evidence." <u>United States v. Esposito</u>, 834 F.2d 272, 275 (2d Cir. 1987). The Court finds that Petitioner has not made this threshold showing. From Petitioner's account, it appears that if the alleged statement by the victim was made at all, it was made in Petitioner's presence – in which case the government clearly cannot be said to have withheld the information from Petitioner. If Petitioner is not claiming that the statement was made in his presence, he has not offered any evidence that the statement was made at all. He has not explained when or how he learned of the statement, or identified any documentary evidence that the statement was made. If the events he describes were recounted to him by someone who was present at the scene, it is not clear why he is still unable to identify the police

12

officers who questioned Gonzalez, who are the only other individuals who were alleged to have been there at that time. (See Pet. Repl. Govt. Resp. at 30.) Accordingly, this claim is dismissed.

## V.     *Lack of Probable Cause*

Petitioner asserts that his arrest was grounded in a fabricated confession, rather than based on probable cause. Petitioner did not raise this claim at trial or on appeal. The Court finds that this is a claim of legal insufficiency rather than actual innocence, and that Petitioner's procedural defaults in failing to raise this claim at earlier stages or to raise this claim within the statute of limitations for 28 U.S.C. § 2255 therefore cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154. Additionally, the Court notes that the claim must fail on the merits because Petitioner was arrested pursuant to an indictment, and "an indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause[.]" United States v. Contreras, 776 F.2d 51, 53–54 (2d Cir. 1985) (internal quotations and citations omitted). This claim is therefore denied.

## VI.     *Bias and a Prejudicial Misstatement of Law*

Petitioner asserts that his conviction should be vacated due to the Court's bias and a prejudicial misstatement of law on the part of this Court, in that the Court allegedly told the jury that Petitioner was guilty at the start of the trial. Petitioner is referring to the Court's misstatement that Petitioner had pleaded "not innocent" — a misstatement that the Court soon corrected, explaining to the jury that the Court had

13

accidentally misspoken and had intended to say that Petitioner had pleaded not guilty. (Tr. 5, 42.) Petitioner made no objection to the misstatement at the time and did not raise this claim on appeal. The Court finds that this is a claim of legal insufficiency rather than actual innocence, and that Petitioner's procedural defaults in failing to raise this claim at earlier stages and to raise this claim within the statute of limitations for 28 U.S.C. § 2255 therefore cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154.

The Court also finds that this claim would fail on the merits even if Petitioner could overcome the procedural barriers, because it was clear from the overall jury charges and the remainder of the trial record that the Petitioner was pleading not guilty and that the jury must accord him a presumption of innocence, which is sufficient to defeat challenges to the instruction. See United States v. Desimone, 119 F.3d 217, 227 (2d Cir. 1997) (noting that jury instructions must be evaluated in their entirety).

## VII. *Ineffective Assistance of Counsel*

Petitioner asserts that his trial counsel was ineffective for failing to call the following witnesses: Melinda McCoy, Joseph Williams, Victor Ureana, Leon Griffin, Lisa Washington, Rafael Arroya, Wayne Davenport, and the police officers from the 73rd Precinct who accompanied Petitioner and Gonzalez to the hospital shortly before Gonzalez's death. (Pet. Repl. Govt. Resp. at 18.) Petitioner states that all of these witnesses were available at the time of the trial, with the exception of Davenport, who he suggests trial counsel could and should have learned of. (Id.) Petitioner also claims

14

that his attorney was ineffective in that he failed to object to: the Court's misstatement described above, in point six; the government's argument to the jury that Castro and Petitioner were the last two people who saw Gonzalez alive, since police officers and doctors at the hospital encountered Gonzalez before he died; the Court's instructions to the jury that direct evidence includes testimony by a defendant, since Petitioner was advised not to testify; testimony by government witness Castro that a red truck was in front of 702 Vermont Street when in fact, Petitioner alleges, it was in front of 706 Vermont Street; testimony by Hernandez-Pina and Detective Brooks that there was a 24-hour store on Miller Avenue, which Petitioner claims is untrue. Finally, Petitioner also claims that appellate counsel provided ineffective assistance in failing to raise any of the claims asserted here. (Pet. Repl. Govt. Resp. at 23.)

The Court finds that these claims are procedurally barred due to the fact that they were not raised within the one year deadline mandated by 28 U.S.C. § 2255, and that there is no basis for equitable tolling for these claims since they are claims of legal insufficiency rather than actual innocence. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154. In addition, the Court notes that even if it were to reach the merits of the ineffective assistance claims, the claims must be denied because, as discussed elsewhere in this Order, the testimony and evidence that Petitioner suggests should have been presented, and the legal arguments that Petitioner believes should have been asserted, are not strongly probative of Petitioner's innocence and are unlikely to have brought about a different outcome in the case. Therefore, Petitioner has not

15

demonstrated that he was prejudiced by his attorney's alleged inadequacies, as required for a showing of ineffectiveness under Strickland. Strickland v. Washington, 466 U.S. 668, 689 (1984).

## VIII.  *Improper Suppression of Favorable Evidence*

Petitioner asserts that the Court improperly suppressed evidence admissible under Federal Rule of Criminal Procedure 807, namely statements made to the police by an eye-witness, which he states would have exculpated him in the murder of Augstin Sosa. According to Petitioner, these consisted of reports to the police by three individuals, one of whom was unable to offer any description of the shooter except for what he was wearing; one of whom called the police station and anonymously reported that the shooter was a man by the name of Russell Yorkman, also known as "Human"; and one of whom stated (three years after the incident) that he saw a man he was acquainted with, who he knew as "Human", shoot Sosa and that Human also later confessed to having committed the murder. (Pet. Repl. Govt. Resp. at 46‑47.)

Petitioner was acquitted of the Sosa murder. However, Petitioner states that the evidence is relevant to his current motion for relief because "had the jury been made aware of this suppressed evidence, they might have concluded that the government's entire case was devoid of any credibility or reliability." (Id. at 47.)

The Court finds, as with Petitioner's previous claims, that this is a claim of legal insufficiency rather than actual innocence, and that Petitioner's procedural defaults in failing to raise this claim at earlier stages and to raise this claim within the statute of

16

limitations for 28 U.S.C. § 2255 therefore cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154. Additionally, the Court notes that the claim appears to be without merit, since the jury clearly concluded that the government's case against Petitioner for the Sosa murder was lacking in reliability and credibility, even without the excluded exculpatory evidence. However, their belief that Petitioner had not murdered Sosa evidently did not translate into skepticism regarding the case against Petitioner for the Gonzalez murder, and therefore it appears unlikely that providing the jury with any further evidence of Petitioner's innocence in the Sosa case would have affected their judgment regarding his guilt in the Gonzalez case.

### IX.    *Allegedly Perjured Testimony by Government Witness Gricety Castro*

Petitioner asserts that government witness Castro committed perjury by misrepresenting the crime scene, in that she testified that Gonzalez's truck was parked in front of 702 Vermont Street while a police officer testified that the truck was in front of 706 Vermont Street. The Court finds that this claim is barred for the same reasons as Petitioner's other perjury claims: it is both untimely, and procedurally barred because it was not raised at trial or on direct appeal.

The Court also finds, as with Petitioner's other perjury claims, that even if the Court were to reach the merits the claim must be denied. There has been no showing that the misstatements constituted perjury as opposed to simple and irrelevant mistakes in memory. "A witness commits perjury when he provides false testimony with 'willful intent,' as distinguished from 'incorrect testimony resulting from confusion, mistake or

17

faulty memory.'" United States v. Beras, 2005 WL 82037, *4 (S.D.N.Y. Jan. 13, 2005) (quoting United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001)). "Simple inaccuracies or inconsistencies in testimony, do not rise to the level of perjury." Monteleone, 257 F.3d at 219. There has been no showing here of wilful intent.[4]

The alleged inconsistencies between the police officer's testimony and Castro's testimony are similar to the minor inconsistencies in the affidavits submitted by Petitioner's proposed witnesses, one of whom recalls that when they left the building after the shooting they found a pair of sandals on the street, and the other of whom recalls that when they left the building they found a single shoe on the street. (Aff. of Joseph Williams, Nov. 27, 2001; Aff. of Wayne Davenport, May 18, 2001.) Petitioner presumably would not wish the Court to infer from this inconsistency that their submissions are perjured, and neither can the Court infer that Castro's testimony was perjured.

Additionally, it has not been shown that the alleged perjury was material, since there is no allegation that a finding that the truck was actually located at 706 Vermont Street would have undermined the government's theory of the case. See Conteh, 226 F.Supp.2d at 519–20. The Court is certainly not "left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Id. Petitioner's claim is therefore dismissed.

---

[4] Petitioner's claim that witnesses committed perjury by stating that a 24-hour store was located at 772 Miller Avenue in Brooklyn, NY, based on the affidavits of proposed witnesses (see Aff. of Victor Urenas, Dec. 11, 2001; Aff. of Melinda McCoy, Jun. 1, 2000) is dismissed for the same reasons.

18

## X.	*Improper Witness Vouching*

Petitioner alleges that the government improperly vouched for the credibility of government witness Hernandez-Pina during closing arguments. As with Petitioner's other arguments, the Court finds that this is a claim of legal insufficiency rather than actual innocence, and that Petitioner's procedural defaults in failing to raise this claim at earlier stages and to raise this claim within the statute of limitations for 28 U.S.C. § 2255 therefore cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154.

The Court also finds that even if it were to reach the merits of Petitioner's claim, the claim must be denied because where, as here, the defense has called the credibility of government witnesses into question, the government "is entitled to reply with rebutting language suitable to the occasion." United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994) (internal quotations and citations omitted). Petitioner's claim is therefore dismissed.

## XI.	*Newly Discovered Eye-Witness Evidence*

Petitioner asserts that the government withheld exculpatory evidence of eye-witnesses' statements made in interviews at the crime scene, and that the statements demonstrate that he is actually innocent of the crime of murdering Gonzalez. (Pet. Repl. Govt. Resp. at 28–29.) Petitioner is referring to statements allegedly made by Joseph Williams and Wayne Davenport, who have subsequently provided affidavits stating that they were witnesses to the murder and that the murder was not committed by Petitioner. Williams states that he went to the federal courthouse to testify in

19

defense of Petitioner and was told by Petitioner's lawyer that his testimony was not needed, and Davenport states that he spoke with police after the murder and was willing to testify. (Aff. of Joseph Williams, Nov. 27, 2001; Aff. of Wayne Davenport, May 18, 2001.)

The Court finds that the evidence presented by Williams and Davenport is not actually exculpatory, and therefore demonstrates neither that the government withheld exculpatory evidence nor that Petitioner is actually innocent. The primary reason that the evidence is not exculpatory is that neither Williams nor Davenport allege that they actually witnessed the murder. Davenport states that he saw Gonzalez with two men just before the shooting, that Gonzalez ran away, and that he then heard "about two or three shots." (Aff. of Wayne Davenport, May 18, 2001, at ¶ 2.) This statement does suggest, if it is credited, that there were additional individuals present at the scene other than Petitioner, but it does not demonstrate that Petitioner was not also there and did not commit the crime. Williams does not allege that he saw Gonzalez at all before he was shot, does not claim that he heard the gun shots, and does not claim that he saw the two individuals mentioned by Davenport. (See Aff. of Joseph Williams, Nov. 27, 2001.)

Additionally, there are inconsistencies between the two statements that reduce their credibility. Davenport and Williams state that they were together at Williams' apartment at the time the murder occurred, and exited the apartment together after the gunshots. However, while Davenport's statement suggests that he knew, upon hearing

20

the gunshots, that it was Gonzalez who had been murdered (see Aff. of Wayne Davenport, May 18, 2001), Williams reports asking Castro who had been shot after hearing her screaming. (Aff. of Joseph Williams, Nov. 27, 2001 at ¶ 2.) Moreover, according to a statement that Williams reportedly made to Petitioner's attorney's investigator on February 16, 1998, Williams stated that he did not learn until after asking Castro and receiving no reply, walking to the corner for a cup of coffee, and returning to his apartment, that he learned that it was Gonzalez who had been shot. (Memorandum from Francisco Gonzalez to Paul Rinaldo, Feb. 16, 1998 (attached as exhibit to Petitioner's § 2255 Motion).) It does not appear plausible that if Williams and Davenport were together in the apartment, and exited the apartment together as they claim, Williams would remain unaware of the victim's identity despite Davenport's knowledge that it was Gonzalez. Petitioner's claims are therefore denied.

## XII.  *Perjured Testimony of Detective Edward McDonough*

Petitioner states that Detective McDonough committed perjury in that he testified that when he arrived at the crime scene, he encountered a man and a woman there, and spoke to them, but that he never learned who the man was. (Pet. Repl. Govt. Resp. at 28.) Petitioner suggests that the individual whom he questioned was Wayne Davenport and that his identity was known to McDonough. (Id. at 28–29.)

The Court finds that as with Petitioner's other perjury allegations, Petitioner's arguments constitute a claim of legal insufficiency rather than factual innocence, and thus the procedural defaults — Petitioner's failure to raise the claim at trial or on

appeal, and Petitioner's late filing — cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154.

Additionally, the Court finds that the evidence presented by Petitioner is insufficient to demonstrate perjury. According to the affidavit submitted by Wayne Davenport, he was questioned by a police officer on the morning of June 24, 1993. Davenport does not identify that police officer as being Detective McDonough. (See Aff. of Wayne Davenport, May 18, 2001.) The Court finds that the affidavit does not provide evidence indicating that Davenport's conversation was with McDonough, and therefore does not suggest that McDonough's testimony was perjured. Additionally, even if the conversation was between McDonough and Davenport, there is no basis to conclude that McDonough's statements constituted intentional misrepresentation rather than faulty memory or an unintended mistake.

## XIII. Prosecutorial Solicitation of Prejudicial Testimony

Petitioner contends that the government committed prosecutorial misconduct by soliciting prejudicial testimony from government witness Idelfa Jerez, to the effect that Jerez's infant had been kidnaped on a block that was alleged to have been under control of the Mateo organization. (Pet. Repl. Govt. Resp. at 47–48.) Like Petitioner's other claims, this argument goes to the legality of the government's case rather than to Petitioner's actual innocence, and therefore Petitioner's procedural defaults cannot be excused. See Bousley, 523 U.S. at 622; Doe, 391 F.3d at 154.

Additionally, the Court finds that the government did not commit misconduct

22

and that the testimony did not unfairly prejudice Petitioner. The prosecutor did not solicit the testimony by asking about the kidnaping; rather, the prosecutor asked Jerez about the date that she closed her place of business and Jerez answered by stating that she closed it when her daughter was kidnaped. The prosecutor *did*, however, solicit the information that Jerez's baby had been safely returned to her. (Tr. 565.) The Court then instructed the jury to disregard the testimony, stating:

> I'm going to strike that portion of the witness's testimony that relates to the kidnaping of her daughter. It is irrelevant in this case and there is no suggestion that the defendant is in any way implicated in the kidnaping. It is just irrelevant, okay.

(Tr. 568.) Courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." Greer v. Miller, 483 U.S. 756, 767 n.8 (1987) (internal citations omitted). There is no showing here that the jury would have been unable to follow the curative instruction or that the effect of Jerez's statement was devastating to Petitioner. Accordingly, Petitioner's claim is denied.

## XIV. Petitioner's *Apprendi* Claim

Petitioner asserts that his sentence was imposed in violation of the Supreme Court's decision in Apprendi, 530 U.S. 466. The Supreme Court decided Apprendi on June 26, 2000. The Second Circuit has held that Apprendi does not apply retroactively

23

to initial or successive 28 U.S.C. § 2255 petitions for habeas relief. Coleman v. United States, 329 F.3d 77 (2d Cir. 2003) (considering initial 28 U.S.C. § 2255 petition); Maldonado v. U.S., 344 F.3d 244, 245 (2d Cir. 2003) (considering successive 28 U.S.C. § 2255 petition). Petitioner is therefore only eligible for relief if his conviction became final after June 26, 2000. As discussed above, Petitioner's conviction became final on became final on January 27, 2000, ninety days after the Second Circuit affirmed his conviction. This Court therefore cannot apply Apprendi retroactively to Petitioner's claim regarding his sentence.

## XV.    *Petitioner's Blakely Claim*

Petitioner asserts that his sentence was imposed in violation of the Supreme Court's decision in Blakely, 124 S.Ct. 2531. The Supreme Court decided Blakely on June 24, 2004. At the present time, all indications are that Blakely does not apply retroactively to either first or successive § 2255 motions, as Blakely announced a procedural rule that does not fall within either of the exceptions defined in Teague v. Lane, 489 U.S. 288 (1989). See, e.g., Green v. U.S., No. 04-6564, 2005 WL 237204 (2d Cir. 2005) (denying authorization to file a second or successive habeas petition under 28 U.S.C. § 2255 because Blakely did not establish a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004) ("To date, the Supreme Court has not . . . announced Blakely to be a new rule of constitutional law, nor has the Court held it to apply retroactively on collateral review."); Warren v. United States, No.

24

3:01 CV 179, 2005 WL 165385, *10 (D.Conn. Jan. 25, 2005); <u>Garcia v. United States</u>, No. 04-CV-0465, 2004 WL 1752588, *5 (N.D.N.Y. Aug. 4, 2004); <u>Bishop v. United States</u>, No. 04 Civ. 3633, 2004 WL 2516715, *10 n.8 (S.D.N.Y. Nov. 8, 2004). Petitioner is therefore only eligible for relief under <u>Blakely</u> if his conviction became final after June 24, 2004. As discussed above, Petitioner's conviction became final on January 27, 2000. This Court therefore cannot apply <u>Blakely</u> retroactively to Petitioner's claim regarding his sentence.

## CONCLUSION

For the reasons stated herein, Petitioner's Motion for Relief pursuant to 28 U.S.C. § 2255 is DENIED. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" <u>Santana v. United States</u>, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting <u>Rhagi v. Artuz</u>, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Where a petition is dismissed on procedural grounds, the petitioner seeking a certificate of appealability must show that both the procedural and underlying constitutional issues are reasonably debatable. <u>Sosa v. U.S.</u>, 2003 WL 22218505, *1 (S.D.N.Y. Sept. 25, 2003). The Court finds that the question of whether equitable

25

tolling of the statute of limitations is permissible when a petitioner makes a showing of actual innocence, and if so how strong that showing of actual innocence must be, is a reasonably debatable issue. Accordingly, this Court grants a certificate of appealability.

The Clerk of Court is directed to enter a final judgment of dismissal and to close the case.

SO ORDERED.

Dated: June 17, 2005
      Brooklyn, New York

s/SJ

Senior U.S.D.J.